McBRIDE, Judge.
Defendant in this direct action appeals from a judgment in plaintiff’s favor for workmen’s compensation at the maximum rate not exceeding 400 weeks, as for total' and permanent disability arising from an accident which befell plaintiff on May 13, 1959, during the scope and course of his *586 employment as common laborer with defendant’s assured.
The sole question presented is whether plaintiff, a 27-year-old negro, has carried the burden of establishing his claim by a preponderance of the evidence beyond mere possibility or probability. To answer the question first requires an analysis of the evidence given by the medical experts, three of whom, namely Drs. Blamphin, Battalora and Llewellyn, were produced by plaintiff. Drs. Rabin, Soboloff and Corales appeared for the defense.
Plaintiff, while carrying a heavy object, slipped and wrenched his back. He was sent to the employer’s doctors and taken in charge by Dr. Herman Rabin, surgeon, who, besides making examinations on May 14 and 18,1959, treated plaintiff until May 28, when the patient was referred to Dr. Soboloff. At the outset Dr. Rabin thought plaintiff had suffered a back injury as he found tenderness about the lumbosacral area, but that such finding was “minimal.” He last saw plaintiff June 2 and was then of the opinion that if there had been a lumbar sprain, the patient had recovered.
Dr. H. R. Soboloff, specializing in orthopedic surgery, examined plaintiff in the latter part of May upon referral by Dr. Rabin. He testified plaintiff undressed with a great deal of difficulty and' could not execute the normal range of motion in his back because of a slight restriction of the musculature (an objective finding) which could be causing pain. X-ray films showed a tightness of the back. From his “minimal” findings, Dr. Soboloff believed the patient should undergo treatment for a short period. Dr. Soboloff’s testimony impresses us as being most favorable to plaintiff. He readily gave credit to plaintiff for being “constant” in the various tests. When asked if plaintiff was “putting on,” Dr. Soboloff replied:
“I would say that he could not put them on since he is not sufficiently conversant with medical examinations, and if he would have had full range of motion in one position and then restriction markedly in another position, I would not have believed him, but he was consistent enough throughout all of this with this restriction so that I felt he had something, and this to me was something he could not put on.”
The doctor advanced the opinion that plaintiff could go back to work as soon “as he got this slight tightness out of his back,” but would be incapacitated from two to six weeks “depending on his response to the treatment.” At the time he gave his deposition, although Dr. Soboloff had not seen plaintiff for nearly a year, he said he did not believe the patient could still be suffering as a result of the accident.
Dr. Arthur Blamphin, general practitioner, in August 1959 found that palpation of plaintiff’s back produced excruciating pain even to light touch. He administered ultrasonic treatments from August 18 to September 16, and when there was no improvement, he sent the patient to Dr. Battalora. Dr. Blamphin was inclined to believe plaintiff had a lumbosacral strain and was “under anxiety.”
Dr. George C. Battalora, orthopedic surgeon, saw and examined plaintiff, who was complaining of pain in the lower back and groin, in September 1959. He noted the presence of generalized tenderness all over the lower back and lower extremities. However, Dr. Battalora said the patient was difficult to “evaluate” and that he had a feeling he was exaggerating. Dr. Battalora “wasn’t too positive” of the existence of pain as he could find no orthopedic symptoms to which the plaintiff’s complaints could be attributed. However, plaintiff was given the benefit of the doubt and was referred to a neurosurgeon. Dr. Battalora stated plaintiff would be unable to return to work if “his condition was bona fide.”
In October 1959, Dr. R. C. Llewellyn, neurosurgeon, according to his report en *587 tered into the evidence by agreement of counsel, detected low back soreness.
Plaintiff was examined by Dr. Richard H. Corales, Jr., neurosurgeon, on March 4, 1960 (twenty days before the trial), who found the presence of tenderness of palpation of the paravertebral muscle in the area of the lower back. Dr. Corales saw no reason for the pain from a neurological standpoint and the patient was told to see an orthopedic consultant.
Counsel for appellant point out and the testimony clearly shows that plaintiff was guilty of exaggerating his complaints to several of the physicians, even to his own, but we do not think that such factor alone should weigh so heavily against him as to bar a recovery for workmen’s compensation. All courts are aware that not infrequently compensation claimants are disposed to and do magnify the nature of their injuries and disability.
From the physicians’ evidence one fact stands out and that is that all of them found tenderness in plaintiff’s lower back. Such pathology existed as late as Dr. Corales’ examination made on behalf of defendant just twenty days before the trial below.
None of the medical experts would classify plaintiff’s injuries, and all we can say from their combined evidence is that it is most reasonable to conclude that because of the tenderness plaintiff does experience the pain in the back of which he has constantly made complaint and because of such condition is unable to resume his occupational duties. The jurisprudence is to the effect that the mere fact that a compensation claimant is unable to specifically classify or indicate the type of injury he has sustained does not preclude a recovery of compensation. The test is disability vel non and not the nature of the injury. Johnson v. Atlantic and Gulf Stevedores, Inc., La.App., 102 So.2d 518.
The trial judge believed that plaintiff was unable, on account of pain and discomfort to return to the heavy duties required by his occupation of a laborer and so stated in his written reasons for judgment.
Well-established jurisprudence holds that a workmen’s compensation claimant will be deemed totally and permanently disabled where he is unable to resume his former employment without enduring substantial pain. Reed v. Calcasieu Paper Company, Inc., 233 La. 747, 98 So.2d 175; Emilien v. National Gypsum Company, La.App., 109 So.2d 106; Watson v. T. Smith and Son, Inc., La.App., 88 So.2d 69.
Proof of disability arising by reason of subjective pain must of necessity depend to a great extent upon the evaluation of the truthfulness of the claimant’s complaints, and proof of the disability based essentially upon such evaluation is sufficient to support an award of workmen’s compensation when the medical testimony shows that such disabling pain may be the residual from the industrial accident. Schram v. Lake Charles Ready-Mix, Inc., La.App., 125 So.2d 213.
Where the veracity of a witness is involved, the lower court is in the better position to pass upon the question because the trial judge had the opportunity of' observing the demeanor of the witness while he is giving his testimony, and in these circumstances the reviewing court is in no position to say that the trial judge manifestly erred in his findings unless the testimony accepted below is so obviously unsatisfactory or inconsistent as to destroy the credibility of the witness. See Barlotta v. Walker, 223 La. 157, 65 So.2d 122.
The courts will only stigmatize a claimant as a malingerer upon convincing evidence justifying that conclusion for to hold one a malingerer is to hold him a perjurer for gain. Doane v. Board of Com’rs of Port of New Orleans, La.App., 163 So. 717; Green v. National Manufacture & Stores Corporation, La.App., 159 So. *588 412; Yelverton v. Louisiana Cent. Lumber Co., 19 La.App. 21, 138 So. 684.
The judgment rendered below is eminently correct and it is therefore affirmed.
Affirmed.