HALL, Judge.
Plaintiff, the subrogated collision insurer of an automobile owned and operated by Miss Joy Murphy, brought this suit to recover the amount it paid for repairs to the Murphy automobile which was damaged in an intersectional collision with a car owned and driven by the defendant. From a judgment rejecting its demands and dismissing its suit, plaintiff appealed.
The accident occurred about 6 A. M. on June 13, 1960 in the intersection of Dumaine and North Galvez Streets in the city of New Orleans. Dumaine Street is a one-way street running from the river towards *81 the lake. North Galvez Street runs in a downtown direction away from Canal Street and intersects Dumaine Street at right angles. The intersection is controlled by an automatic electric traffic light.
At the time of the accident Miss Murphy was proceeding towards the lake on Du-maine Street and the defendant was driving his car in a downtown direction on North Galvez. The two automobiles collided in the intersection. The evidence is in conflict as to which car struck the other and as to what parts of the vehicles first came in contact, but in any event the Murphy automobile went out of control and struck a pile of bricks and a church under construction on the lake side of the intersection. The defendant’s vehicle came to rest a few feet from the point of impact. Neither driver had seen the other until the moment of collision.
It is conceded that the proximate cause of the accident was that one or the other of the vehicles entered the intersection against an unfavorable traffic light. The sole issue in the case is which driver ran the red light.
Miss Murphy testified that she was proceeding on Dumaine Street at about twenty miles per hour and first noticed the light as she was about two car lengths from the intersection; that the light was green in her favor and that she continued into the intersection on the green light.
The defendant testified that he was proceeding down North Galvez Street at about eighteen miles per hour; that the light changed from red to amber when he was about fifteen feet from the intersection and changed to green in his favor when he was five or six feet from the intersection.
In addition to the testimony of the two drivers we have the testimony of three other eye witnesses to the accident. Two of them testified for the defendant and one for the plaintiff.
Ernest Smith, a seventy-four year old Negro, testifying on behalf of defendant, said that he was standing on the sidewalk along North Galvez Street near the intersection when the accident occurred. He testified that he heard the crash, and looking up, he saw the Murphy vehicle travelling out of control. He testified further that at the time he heard the crash and looked towards the intersection the light was green in favor of traffic on North Galvez Street. Smith admitted that his eyesight was poor due to his age but adhered to this testimony despite vigorous cross-examination.
Smith’s version of the accident was confirmed by defendant’s other witness, Charles Harrison. Harrison testified that he was on Galvez Street talking to Smith at the time of the accident; that he saw defendant’s automobile as it passed the point where he was standing fifty feet from the intersection and that at that time the light was green for the defendant; that defendant was travel-ling about twenty miles per hour; that he did not see the collision but looked up immediately when he heard the crash. At this time according to his testimony the light was still green for traffic on North Galvez Street.
The only other witness to the accident was Jean Valz, who testified on behalf of plaintiff. Valz testified that he was driving behind Miss Murphy’s car on Dumaine Street as they were returning to their respective homes from their night club jobs in the French Quarter. His testimony was that both he and Miss Murphy were going at about twenty miles per hour and that the light was green in her favor as she entered the intersection. When the collision occurred Valz put on his brakes and stopped his car.
A review of the testimony in further detail would serve no useful purpose. The testimony of the witnesses is in direct conflict as to which party had the green light.
Plaintiff argues that the testimony of defendant’s witnesses should not be believed; that Smith’s eyesight was poor; that the testimony of defendant’s witness Harrison is in conflict with defendant’s own testimony in that Harrison testified the *82 light was green for Galvez Street traffic when defendant was fifty feet from the intersection while defendant himself testified the light changed from amber to green when he was five or six feet from the intersection. Plaintiff further argues that defendant’s testimony can’t be true because traffic lights change directly from red to green, without going through amber. On this point it should be observed that there is nothing in the record to show the cycle of this particular light, and while it is well known that most traffic lights in the city at the present time change directly from red to green, they have not always operated in this fashion.
While it is true that defendant seems to have been somewhat confused in his testimony, there is no confusion whatever in the testimony of Smith and Harrison. They state positively that the light was green for Galvez Street traffic at the time of the accident. These two witnesses were not connected in any way with the defendant, and in fact had never seen him before the day of the accident.
On the other hand, plaintiff’s witness, Valz, was a friend of Miss Murphy’s, and while both Miss Murphy and Valz testified positively that she had the favorable light some reflection is cast on their credibility by the fact that although they testified they were travelling only twenty miles per hour, Valz left forty-two feet of skid marks when he stopped his car, and following the collision Miss Murphy’s car travelled ninety feet out of control and was stopped by running into the church. Furthermore, although plaintiff and her witness denied that they had anything to drink the police report shows that the investigating officer detected the odor of alcohol on their breaths.
 The decision in the case depends entirely upon whose testimony is to be believed. The District Judge evidently believed the defendant’s witnesses, and disbelieved those of the plaintiff. He heard the witnesses and observed their demeanor on the witness stand and was in a better position to determine their credibility than we are.
“It is a well settled legal principle that the trial judge’s findings on questions of fact and particularly on questions involving credibility of witnesses, who testify before the trial judge, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous.” Ybarzabal v. Stipelcovich, La.App., 135 So.2d 312, 314. See also: Barlotta v. Walker, 223 La. 157, 65 So. 2d 122; Aime v. Nola Cabs Inc., La. App., 75 So.2d 526.
Since we find nothing in the record to indicate manifest error, the judgment appealed from is affirmed. Costs of both courts to be borne by plaintiff.
Affirmed.