171 So.2d 751 (1965)
Melvin LAVERGNE, Plaintiff and Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant and Appellant.
No. 1353.
Court of Appeal of Louisiana. Third Circuit.
February 10, 1965.
*752 Edwards & Edwards, by William C. Broadhurst, Crowley, for defendant-appellant.
Payton R. Covington, Lake Charles, for plaintiff-appellee.
Before SAVOY, FRUGE and HOOD, JJ.
HOOD, Judge.
This is a workmen's compensation suit in which the plaintiff, Melvin Lavergne, alleges that he sustained a hand injury while working for L. W. Hoyt, and that as a result of that injury he has been and is totally disabled. The suit was instituted against Southern Farm Bureau Casualty Insurance Company, the employer's compensation insurer. Judgment was rendered by the trial court in favor of plaintiff, awarding him compensation benefits based on total and permanent disability, and the defendant appeals.
Plaintiff has been paid weekly compensation benefits at the correct rate from the date on which the accident occurred, September 27, 1963, until December 31, 1963. The sole issue presented on this appeal is whether plaintiff has had any disability since December 31, 1963, which was caused by or is related to the injury which he sustained on September 27 of that year.
At the time the accident occurred, plaintiff was employed by Hoyt to perform common labor in connection with the construction of a rice mill. His duties required him to assist in moving heavy pieces of machinery, posts, tin and other large items, and in the performance of those duties it was necessary for him to do heavy lifting and gripping with his hands. Prior to September, 1963, his usual or customary type of employment was that of a common laborer in construction work, and his duties in that type of work frequently required him to carry boards and to do other heavy lifting.
On September 27, 1963, while plaintiff was assisting a fellow employee in carrying a heavy wooden pole, the pole was dropped and fell across the top of plaintiff's right hand, fracturing the first metacarpal bone of the little finger of that hand. The hand became painful and swollen shortly after the accident occurred. He received medical treatment which included putting the hand in a splint and then in a cast for approximately three weeks. He testified that although the cast has been removed his hand continues to pain him about 90% of the time, and that it becomes swollen often, particularly when he endeavors to use it in performing any type of strenuous work. He states that because of the swelling and the pain in his hand, he is unable to do the type of work he was performing prior to the accident.
Plaintiff was treated by Dr. H. L. Gardiner, Sr., a general surgeon, on September 30 and on October 1, 1963. Although Dr. Gardiner felt that plaintiff should have recovered within two and one-half months after the date of the accident, he has not seen plaintiff since October 1, 1963, and he thus was unable to express an opinion as to whether plaintiff is presently disabled.
Dr. L. E. Shirley, a general practitioner, treated plaintiff from October 1 to November 20, 1963, and he discharged plaintiff on the last-mentioned date as being capable of doing the same work as before the injury. Dr. Shirley did not testify at the trial, however, and it was stipulated that if he were called as a witness he would testify as set forth in his reports, and that "he had no opinion as to any further disability in the plaintiff."
*753 Plaintiff was examined by Dr. Norman P. Morin, an orthopedic surgeon, on December 9, 1963, and again on February 10, 1964. Dr. Morin found a healing fracture of the mid-shaft of the fifth metacarpal bone, with a malalignment or deformity which he describes as being "approximately fifteen degrees dorso-lateral, meaning to the top and to the side angulation." He explained that this deformity is permanent and that "it causes abnormal pressure whenever you grip with the hand, and consequently this causes pain." Dr. Morin also found a moderate relative weakness of the right grip as compared to the left. He felt that plaintiff was disabled at the time of the first examination. Following the second examination, however, he concluded that plaintiff had sustained an 8% partial permanent disability of the right hand, but that at the time of that later examination, "this should not prevent him from returning to laborer's work," although he would suffer "mild pain" or "discomfort" in the hand if he performs that type of work.
With further reference to the type of work which plaintiff can perform, Dr. Morin testified that he is unable to say whether the pain would increase or diminish if plaintiff continued to work with his hand, that if he limits his work to light duties it would not be "too hard on his hand," but that if he does "forceful work, as you see them when they change the tires on an automobile or a truck * * * he could well experience a fair amount of discomfort." He further testified:
"I do feel that should this man limit his activities solely to light work, then I think with time that it (pain) will diminish. On the other hand, if he irritates this area every day although just for a few minutes, then I think that with time it may well increase."

* * * * * *
"Q. Doctor, this bone deformity that he has of the right hand. This is a permanent defect?
"A. That is correct. It will not correct itself.
"Q. Do you feel he will suffer some pain and discomfort in doing laboring work in the future?
"A. That is correct. Should this man ever have to work in the oil field, I think that in such a case he will not be able to do so because of this injury."
The lay evidence shows that after plaintiff was discharged by Dr. Shirley, he obtained employment in a service station, but that he left that employment because his right hand became swollen and painful when he endeavored to change a tire. He drove a tractor for two days, but quit because his hand again became swollen and painful. He worked for a few days in tearing down a barn, but discontinued that also because of pain and swelling in his hand. Finally, he endeavored to assist in moving a washing machine, but was unable to do that because of the condition of his right hand. The lay testimony is uncontradicted to the effect that plaintiff's hand has become swollen frequently since the date of the accident.
Defendant contends that the pain or discomfort which plaintiff would suffer upon returning to his customary type of employment is of such a minor nature that it would not justify classifying him as being disabled from performing the type of work which he customarily performed prior to the accident. In that connection, defendant points out that according to Dr. Morin plaintiff would suffer only "mild pain" or "discomfort in that hand" if he uses his hand in performing common labor. It is argued that the pain must be "severe," "great," or "substantial" in order to justify a holding that he is disabled within the provisions and meaning of the workmen's compensation act.
The law does not expect, and it does not contemplate, that a worker, in order to earn a living, must work in pain *754 or that he must work when it will materially increase not only the hazards to his own health, but also to those of his fellow employees. Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1.
Where an employee is unable to resume his former employment without inducing pain, then in order for him to be deemed totally disabled within the meaning of our workmen's compensation act, the pain experienced must be a substantial pain. It must be more than a trivial or minor discomfort or those ordinary aches and pains to which all flesh is heir. Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894; Murphy v. Baton Rouge Coca-Cola Bottling Co., La.App. 1 Cir., 165 So.2d 636; Wilson v. Fogarty Brothers Transfer Co., La.App. 4 Cir., 126 So.2d 6; Rushing v. Employer's Liability Assurance Corp., La.App. 2 Cir., 129 So.2d 576; Reed v. Calcasieu Paper Company, Inc., 233 La. 747, 98 So.2d 175; Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138; Jackson v. Bituminous Casualty Corp., La. App. 4 Cir., 153 So.2d 585.
Our Supreme Court, in Glidden v. Alexandria Concrete Company, supra, observed that:
"It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or `good-as-new' recovery essential before an employer may stop compensation payments. The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker's fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health."
In the instant suit Dr. Morin is the only medical expert who expressed an opinion as to whether plaintiff is presently disabled. Although he stated, as pointed out by defendant, that the plaintiff would suffer "mild pain" or "discomfort" if he returns to "laborer's work," we think a review of his entire testimony shows that by "laborer's work," he meant relatively light work. His opinion, as we interpret his testimony, is that plaintiff can return to light work in his present condition, and that the mild pain or discomfort which he would suffer upon returning to that type of work would not be disabling and in time the pain would diminish. He feels, however, that plaintiff is not able to perform heavy manual labor, such as that required in oil field work, and that if he did perform that type of work it would irritate the hand and may well cause the pain to increase. The lay evidence indicates that plaintiff's hand does become irritated and swollen when he endeavors to perform hard work. And, as has already been pointed out, prior to the accident he customarily performed heavy labor requiring the use of his hands.
The trial judge concluded that plaintiff suffers "true, real pain in performing labor of the type he performed at the time of injury. It is more of an aching pain than a crippling pain, but is sufficient in the court's view to grant total and permanent disability." We cannot say that the trial judge erred in arriving at that conclusion.
Defendant contends alternatively that plaintiff is not entitled to recover more than the amounts allowed by the workmen's compensation law for the partial loss of the use of the hand, basing that argument on the testimony of Dr. Morin that plaintiff has an 8% partial permanent disability of the hand. We find no merit to this argument since the evidence shows that as a result of the injury, and side from the fact that plaintiff may have a partial permanent loss of the use of the hand, he is totally disabled from performing the type of work he *755 was performing at and prior to the date of the accident. See Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Young v. Central Surety & Insurance Corporation, La.App. 2 Cir., 41 So.2d 700; Scott v. Fulton Bag & Cotton Mills, La.App.Orl., 65 So.2d 397; Viator v. Hub City Contractors, Inc., La.App. 1 Cir., 116 So.2d 878; and Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138.
After reviewing all of the evidence, we have concluded that the judgment appealed from should be affirmed. If plaintiff's disability should become diminished, as the medical testimony indicates is possible, then it may become appropriate for the trial court to review and to modify the judgment under the provisions of LSA-R.S. 23:1331.
For the reasons herein set out, the judgment appealed from is affirmed. Costs of this appeal are assessed to the defendant-appellant.
Affirmed.